UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| In Re | ) |
| | ) **JUDGE RICHARD L. SPEER** |
| Norwalk Furniture Corp. | ) |
| | ) Case No. 09-3201 |
| Debtor(s) | ) |
| | ) (Related Case: 08-35222) |
| Louis Yoppolo, Trustee | ) |
| | ) |
| Plaintiff(s) | ) |
| | ) |
| v. | ) |
| | ) |
| Comerica Bank | ) |
| | ) |
| Defendant(s) | ) |

## MEMORANDUM OPINION AND DECISION

This cause comes before the Court after a Hearing on the Defendant's Motion for Summary Judgment. (Doc. No. 8). In its Motion for Summary Judgment, the Defendant seeks the Dismissal of the Plaintiff's Complaint and an order compelling the Trustee to surrender estate property. The Plaintiff, the bankruptcy trustee, filed an Objection to this requested relief. (Doc. No. 21). Each of the Parties also filed memoranda supporting their respective positions. The Court has now had the opportunity to review the arguments submitted by the Parties, as well as the entire record of this case. Based upon this review, the Court, for the reasons set forth herein, finds that the Defendant's Motion for Summary Judgment should be Granted as provided herein.

### FACTS

The Debtor, Norwalk Furniture Corporation (hereinafter the "Debtor"), was a manufacturer of furniture for retail sale. On October 3, 2008, the Debtor filed a petition in this Court for relief under

Louis Yoppolo, Trustee v. Comerica Bank
Case No. 09-3201

Chapter 7 of the United States Bankruptcy Code. The Plaintiff in this case, Louis Yoppolo, was thereafter appointed the trustee of the Debtor's bankruptcy estate and continues to act in that capacity.

In his capacity as bankruptcy trustee, Mr. Yoppolo (hereinafter the "Trustee") filed amended tax returns on behalf of the Debtor for the tax years of 2004 and 2006. The 2004 amended return was filed for the purpose of obtaining a carryback deduction as the result of a net operating loss incurred by the Debtor in the 2006 tax year. Based upon the filing of these amended returns, it was represented to the Court that the Trustee received, on behalf of the Debtor's estate, tax refunds totaling $411,790.00. (Doc. No. 8, at pg. 2). Of this amount, $401,384.00 was attributable to the 2004 loss carryback; the remaining $10,406.00 was attributable to changes made to the Debtor's 2006 year tax return. *Id.*

By virtue of prepetition extensions of credit, the Defendant, Comerica Bank (hereinafter the "Bank"), maintains a claim against the Debtor's bankruptcy estate. For its claim, the Bank asserts that, based upon the terms of a security agreement executed in May of 1994, and the subsequent filing of a financing statement, its claim constitutes a valid, first-priority perfected lien against substantially all of the Debtor's personal property, including, as set forth in the agreement, tax refunds and cash proceeds. In support of its secured claim, the Bank filed a formal proof of claim, wherein it was set forth:

> Bank's total claim against the Debtor as of October 3, 2008 is $8,932,633.70 plus interest accruing after the Petition Date, plus fees, costs and charges to the extent allowable under applicable law, the Loan Documents and section 506 of . . . of title 11 of the United States Code, 11 U.S.C. §§ 101-1532.

(Claim No. 194-1). No objection was filed against the Bank's proof of claim.

After the Debtor sought bankruptcy relief, the Bank filed a Motion for Relief from Stay. (Main Case, Doc. No. 47). Over the Objection of the Trustee, the Court granted the Bank's motion for relief.

Page 2

Louis Yoppolo, Trustee v. Comerica Bank
Case No. 09-3201

(Main Case, Doc. No. 118). An order was subsequently entered by the Court on November 24, 2008, in which it was stated:

> This Court also finds that Comerica Bank's claim against Debtor is secured by all of Debtor's personal property. Comerica Bank's collateral includes Debtor's accounts receivable, equipment and inventory, general intangibles . . . .

(Main Case, Doc. No. 125).

On August 25, 2009, the Trustee commenced this adversary proceeding, seeking primarily two forms of relief: (1) to recover preferential transfers made to the Defendant, totaling at least $9,644,537.51 in value; and (2) for a declaratory judgment that the prepetition security interest of the Bank did not attach to any tax refunds received by the estate after the commencement of the Debtor's bankruptcy case.[1] (Doc. No. 1). In response, the Bank filed its Motion for Summary Judgment, seeking the Dismissal of this Adversary Proceeding and an order compelling the Trustee to surrender the tax refunds it holds on behalf of the Debtor's estate.

## PROCEDURE

Before this Court is the Defendant's Motion for Summary Judgment. The standard for summary judgment is set forth in Federal Rule of Procedure 56(c), which is made applicable to this proceeding by Bankruptcy Rules 7056. It provides for in part: A party will prevail on a motion for summary judgment when "[t]he pleadings, depositions, answers to interrogatories, and admission on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving

---

[1] The Trustee's Complaint also set forth causes of action to recover fraudulent transfers pursuant to 11 U.S.C. § 548(a)(1)(B), to recover postpetition transfers pursuant to 11 U.S.C. § 549, to recover the avoided transfers pursuant to 11 U.S.C. § 550, and to disallow claims in accordance with 11 U.S.C. § 502(d) and (j). The Defendant's Summary Judgment Motion did not address these counts of the Trustee's Complaint; thus these counts of the Trustee's Complaint are not subject to Dismissal at this time.

Page 3

Louis Yoppolo, Trustee v. Comerica Bank
Case No. 09-3201

party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2252, 91 L.Ed.2d 265 (1986). With respect to this standard, the moving party must demonstrate all the elements of the cause of action. *R.E. Cruise Inc. v. Bruggeman*, 508 F.2d 415, 416 (6th Cir.1975). In making this determination, the Court is directed to view all the facts in a light most favorable to the party opposing the motion. *Matsushita v. Zenith Radio Corp.*, 475 U.S. 574, 586-588, 106 S.Ct. 1348, 1348, 1356, 89 L.Ed.2d 538 (1986).

## DISCUSSION

The Motion for Summary Judgment brought by the Defendant places before the Court two overall matters: (1) whether prepetition transfers made by the Debtor to the Bank can qualify as preferential transfers within the meaning of 11 U.S.C. § 547; and (2) whether the tax refunds received by the Trustee for the years 2004 and 2006 are subject to the Bank's prepetition security agreement with the Debtor?

Both these matters, as they involve a determination as to the avoidability and recovery of a preference and the determination of the validity of liens against property of the estate, are deemed to be core proceedings. 28 U.S.C. §§ 157(b)(2)(A)/(F)/(K). Accordingly, as core proceedings, this Court has been conferred with jurisdiction to enter final orders and judgments in this matter. 28 U.S.C. § 157(b)(1). For the two matters presented in the Defendant's Motion for Summary Judgment, the Court will first address the matter concerning a preferential transfer.

### Preferential Transfer under 11 U.S.C. § 547

A preferential transfer occurs when a debtor, with insufficient resources to pay all legally due obligations, pays one creditor to the detriment of the debtor's other creditor(s). As a general matter, a preferential payment to one creditor will not be disturbed as the transfer constitutes payment against

Page 4

an otherwise legitimate debt. This, however, is not always the case when a debtor comes under the protection of the Bankruptcy Code.

The nature of a preferential transfer – whereby one of a debtor's creditors receives a greater distribution than another creditor – runs afoul with a basic policy underlying bankruptcy law: to effectuate an equitable distribution of a debtor's nonexempt assets among similarly situated creditors. *In re Shelton Harrison Chevrolet, Inc.*, 202 F.3d 834, 837 (6th Cir. 2000). To remedy any disparity, the Bankruptcy Code, § 547, empowers a bankruptcy trustee to seek the avoidance of certain types of prepetition transfers made by a debtor which qualify under the Code as preferential. Once the transfer is avoided, the trustee is then entitled to recover the property transferred, or the value thereof, for the benefit of the estate. 11 U.S.C. § 550.

In order for a transfer to qualify as preferential, subjecting the transfer to avoidance, within the meaning of the Bankruptcy Code, five elements must be established. These five elements are set forth in paragraphs (1) through (5) of § 547(b), with this provision providing:

> (b) Except as provided in subsections (c) and (i) of this section, the trustee may avoid any transfer of an interest of the debtor in property–
>
> (1) to or for the benefit of a creditor;
>
> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
>
> (3) made while the debtor was insolvent;
>
> (4) made–
>
> (A) on or within 90 days before the date of the filing of the petition; or
>
> (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

Page 5

Louis Yoppolo, Trustee v. Comerica Bank
Case No. 09-3201

> (5) that enables such creditor to receive more than such creditor would receive if–
>
>> (A) the case were a case under chapter 7 of this title;
>>
>> (B) the transfer had not been made; and
>>
>> (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

The trustee bears the burden of proving the existence of these elements. *In re Southern Air Transport, Inc.*, 511 F.3d 526, 534 (6th Cir. 2007). For this burden, each of the five elements for a preference claim under § 547(b) must be shown to exist; the failure to establish any element is, thus, fatal to a trustee's action to recover a preferential transfer. *Id.*

In its Motion for Summary Judgment, the Bank did not challenge the Trustee's ability to sustain his burden of proof for the first four elements set forth in § 547(b). The Bank, rather, limited its focus to the last element of a preferential transfer as set forth in paragraph (5) of § 547(b): whether the transfer enabled it to receive more than it would have received in a hypothetical Chapter 7 case had the transfer not occurred. According to the Bank, this requirement cannot be satisfied because, as a secured creditor, the transfers it received did not result in a diminution of the Debtor's bankruptcy estate. (Doc. No. 8, at pg. 5).

This fifth element of § 547(b)(5) requires a comparison between what the creditor actually received and what it would have received under the chapter 7 distribution provisions of the Code. If, under this comparison, it is determined that what the creditor actually received, is greater than what the creditor would have received upon the debtor's liquidation in a Chapter 7, then the transfer is preferential. *Hall v. Chrysler Credit Corp. (In re JKJ Chevrolet, Inc.)*, 412 F.3d 545, 549 (4th Cir. 2005). This comparison is central to the concept of a preference – that the creditor, on account of the prepetition transfer(s), improved its position over other similarly situated creditors. *In re Schwartz*, 383

Page 6

Louis Yoppolo, Trustee v. Comerica Bank
Case No. 09-3201

B.R. 119, 123 (B.A.P. 8th Cir. 2008). *In re Schwinn Bicycle Co.*, 200 B.R. 980, 987 (Bankr. N.D. Ill. 1996).

In a Chapter 7 bankruptcy, unsecured creditor rarely receive the full value of their claims. Consequently, under the § 547(b)(5) calculation, prepetition payments made to unsecured, nonpriority creditors will almost always result in a preferential transfer unless, in the rare circumstance, the estate has sufficient assets to provide a 100% distribution. *Still v. Rossville Bank (In re Chattanooga Wholesale Antiques, Inc.)*, 930 F.2d 458, 465 (6th Cir.1991). The opposite is generally true for secured creditors. Under the Bankruptcy Code, creditors maintaining a secured interest in property of the estate are, in the absence of the interest being avoided or disallowed, entitled to receive consideration equal to the value of their collateral or to recover their collateral. *See* 11 U.S.C. § 506; § 725. As a result, prepetition payments made on account of a secured claim will normally only provide the creditor with consideration to which it was otherwise entitled to receive in a Chapter 7, thus negating the preferential aspect of the transfer for purposes of § 547(b)(5). *In re Southern Air Transport, Inc.*, 511 F.3d 526, 534 (6th Cir. 2007).

Within this context, the Bank's assertion concerning the secured status of its claim is proper. Section 502(a) of the Bankruptcy Code provides that a proof of claim is deemed allowed unless a party objects. No objection, however, was ever made against the proof of claim filed by the Bank wherein it asserted a secured claim in the amount of $8,932,633.70.

Moreover, pursuant to the Relief from Stay Order dated November 24, 2008, a specific finding was made by this Court that the Bank's claim against the Debtor constituted a claim secured by all of the Debtor's personal property, including the Debtor's accounts receivable, equipment, inventory and general intangibles. An order such as this, granting relief from stay, is a final appealable order. No appeal, however, was taken against this order; thus, its holding became the law of this case and is *res judicata* as to the issue of the Bank's secured status. *Matter of Chunn*, 106 F.3d 1239, 1241 (5th Cir. 1997); *In re Paige*, 413 B.R. 882, 905 (Bankr. D.Utah 2009).

Page 7

In any event, the Trustee did not directly contest the secured status of the Bank's claim. Nor did the Trustee take issue with the legal conclusion that prepetition transfers made to secured claimants are not ordinarily preferential. The substance of the Trustee's position, instead, centered on an exception to this general rule regarding the non-preferential nature of prepetition payments made to secured creditors. In doing so, the Trustee focused on the distinction made by the Bankruptcy Code between oversecured and undersecured claims.

Secured claims in bankruptcy may be classified according to the value of the underlying collateral. Where the value of the collateral is greater than the claim of the secured creditor, the claim is deemed to be oversecured or fully secured. Where this is not the case, and the secured creditor holds a claim for less than the collateral's value, the claim is deemed to be undersecured. For an undersecured claimant, bankruptcy law bifurcates the claim so that the claimant is deemed to hold two claims: a secured claim in an amount equal to the value of its collateral; and an unsecured claim for the deficiency. 11 U.S.C. § 506(a)(1).

When a prepetition payment is made to an undersecured creditor, it is assumed that the funds received are first credited to the unsecured portion of the claim. *In re Fox*, 229 B.R. 160, 165 fn. 2 (Bankr. N.D.Ohio 1998). *See also In Re McCormick*, 5 B.R. 726, 729 (Bankr. N.D.Ohio 1980) ("The Court must assume, in the absence of proof to the contrary, that the payments were credited towards the unsecured portion of the debt, since this course of action would comport with standard business practice."). As a result, until the unsecured portion of an undersecured claim is fully satisfied, the prepetition payment will neither reduce the secured claim nor increase the debtor's equity in the collateral. Under this circumstance, prepetition payments made to the undersecured creditor, going first to the unsecured portion of the claim, will enable that creditor to receive, to the detriment of the debtor's other creditors, more than it would have received upon the debtor's liquidation in a Chapter 7 bankruptcy.

Page 8

Contrary, therefore, to the general exclusion of secured creditors from the reach of § 547(b)(5), prepetition transfers made to creditors holding secured claims, but whose claims are undersecured, may be preferential. *In re C-L Cartage Co., Inc.*, 899 F.2d 1490, 1493 (6th Cir. 1990). It is on this basis by which the Trustee opposes the Bank's Motion for Summary Judgment, relating to the Court that, until he has had a chance to conduct discovery, he cannot ascertain whether the Bank's claim is oversecured or undersecured.

Summary Judgment is only appropriate when it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.BANKR.P. 7056; FED.R.CIV.P. 56(c). Under this standard, since prepetition payments made to undersecured creditors may be preferential for purposes of applying § 547(b)(5), summary judgment by a defendant in a preference action would not be proper until both the amount of the claim and the value of the collateral are known. In this matter, however, only the Bank's claim is known with certainty. On this basis, therefore, the Trustee's position initially appears to have merit; until discovery is commenced and completed, there is no way to know the value of the Bank's collateral, and thus whether its claim is fully secured as is needed to insulate the claim from a § 547 preference action.

Notwithstanding, the prepetition transfers made to the Bank against its secured claim add another dynamic given the type of collateral involved. Under its security agreement with the Debtor, the Bank maintains a secured interest in all of the Debtor's personal property, including its cash proceeds. The Bank's own collateral, thus, may be said to have constituted the source from which it received the prepetition payments from the Debtor. *See* 11 U.S.C. § 363. Under this condition, the Bank argues that, because the source of the Debtor's prepetition payments came from its own collateral, no preference exists. This position finds support.

In the case of *Krafsur v. Scurlock Permian Corp. (In re El Paso Refinery, L P)*, 171 F.3d 249, 254 (5th Cir. 1999), the creditor, as the Bank holds in this matter, maintained a first lien on all of the debtor's accounts receivable, inventory, contract rights, and cash proceeds. In rejecting the contention

Page 9

that prepetition payments made to the creditor were preferential within the meaning of § 547(b)(5), the Court held: "Even if the payment in question was applied to the unsecured portion of an undersecured creditor's claim, the creditor will not be deemed to have received a greater percentage as a result of the payment if the source of the payment is the creditor's own collateral. A creditor who merely recovers its own collateral receives no more as a result than it would have received anyway had the funds been retained by the debtor, subject to the creditor's security interest." *Id.* at 254-55.

For those bankruptcy courts which have addressed the issue, this approach appears to be universally accepted. *See, e.g., In re Nationwide Tower Co.*, 2008 WL 2472935, *3 (Bankr.W.D.Ky. 2008) ("It is generally settled law that a creditor does not receive a greater return from a transfer if the source of the transfer is the creditor's own collateral."); *In Re Intercontinental Polymers, Inc.*, 359 B.R. 868 (Bankr. E.D. Tenn. 2005) (applying *In re El Paso Refinery*). It also appears well grounded in law considering that, as set forth above, a secured creditor is entitled to receive consideration equal to the value of its collateral or to recover its collateral. It is, therefore, difficult to discern how, as is required to maintain a preference action under § 547(b)(5), a creditor receiving its own collateral diminishes the amount of estate assets available for distribution to the debtor's other creditors.

The Trustee also did not present any substantive arguments as to impropriety of what may be termed the "source approach" expounded in *In re El Paso Refinery*. Accordingly, in the absence of any arguments to the contrary, and based upon the soundness of the 'source approach,' the Court will follow the holding expounded in *In re El Paso Refinery* so that where the source of a prepetition payment is a creditor's own collateral, no preference will exist. Accordingly, even assuming that its claim is not fully secured, the Bank, having only received on account of the Debtor' prepetition payments the return of its collateral, cannot be said to have improved its position at the expense of the Debtor's other creditors. For this reason, there does not exist a genuine and material issue of fact regarding the Trustee's ultimate inability to sustain his burden under § 547(b)(5). Summary Judgment must, therefore, be entered in favor of the Bank on the Trustee's complaint to avoid, as preferential under § 547, prepetition transfers made by the Debtor to the Bank.

Page 10

Louis Yoppolo, Trustee v. Comerica Bank
Case No. 09-3201

### Extent and Validity of the Bank's Security Interest in the Debtor's 2004 and 2006 Tax Refunds

The second issue raised by the Bank's Motion for Summary Judgment concerns whether the tax refunds received by the Trustee are subject to the Bank's prepetition security agreement with the Debtor. It is the Bank's position that, because the Debtor's legal right to these tax refunds vested prepetition, in 2006, its security interest in the refunds also attached at this time in accordance with its security agreement. It is the Trustee's position, however, that such refunds are not subject to the Bank's security interest because the tax returns were not filed and the "Internal Revenue Service did not find that a refund was due until well after Trustee filed the refund request in December of 2008 – over two months after the Chapter 7 case commenced." (Doc. No. 21, at pg. 5). In support of this position, the Trustee cites to § 552 of the Bankruptcy Code which generally prevents prepetition liens from attaching to property interests that the estate or the debtor acquires postpetition.

In considering the positions of the Parties, it is first observed that the Trustee's position appears to have an internal inconsistency. The Trustee's position is premised on the postpetition nature of the Debtor's tax refunds. However, subject to limited exceptions as provided in specific provisions of the Bankruptcy Code, interests in property acquired by a Chapter 7 debtor on a postpetition basis do not become property of the estate. 11 U.S.C. § 541(a). As a result, if the Trustee is correct, and the Debtor's tax refunds constitute a postpetition interest in property, those interests, unless brought into the estate by virtue of a specific provision of the Code, would not be subject to administration by the Trustee, with the authority of a Chapter 7 bankruptcy trustee only extending to property of the estate. 11 U.S.C. § 323(a).

However, even this concern aside, the Trustee's position, that the Debtor's interest in the tax refunds arose postpetition, when the returns were filed and the Internal Revenue Service made its eligibility determination, is not supported by applicable precedent. Two decisions by the United States Supreme Court compel this result.

Page 11

Louis Yoppolo, Trustee v. Comerica Bank
Case No. 09-3201

First, in *Segal v. Rochelle*, 382 U.S. 375, 86 S.Ct. 511, 15 L.Ed.2d 428 (1966), the Supreme Court addressed the issue of whether the debtor's claims for loss-carryback tax refunds constituted a prepetition property interest that vested in the trustee when the debtor commenced his bankruptcy case. Just as in this case, this issue was addressed in the context where the business operating losses giving rise to the tax refunds were incurred prepetition, but the claim for the refunds was not made until after the debtor's bankruptcy case had commenced.

Under these conditions, the Supreme Court in *Segal v. Rochelle* held that the claims for the loss-carryback refunds were "sufficiently rooted in the pre-bankruptcy past" so as to warrant the inclusion of the refunds in property of the debtor's bankruptcy estate. For this decision, two points were key: (1) the taxes for which the refund was sought had been paid prior to the debtor filing for bankruptcy; and (2) the operating loss giving rise to the refund also occurred prepetition.

Based upon the Debtor's bankruptcy case being commenced in 2008, both these conditions are also present in this matter, with the Debtor's operating loss occurring in 2006, and the Trustee filing, on account of the loss, an amended return to obtain a refund on taxes paid in 2004. Overall then, there exists an almost complete symmetry between the facts addressed by the Supreme Court in *Segal v. Rochelle* and the facts presented in this case. As such, consistent with the Supreme Court's holding in *Segal v. Rochelle*, the Court can discern no basis to adopt the Trustee's position that the Debtor's 2004 refund, arising as the result of the 2006 loss carryback, is not a prepetition interest of the estate, subject to the Bank's security interest. The same is true of the Debtor's 2006 tax refund.

In *Kokoszka v. Belford*, 417 U.S. 642, 94 S.Ct. 2431, 41 L.Ed.2d 374 (1974), the Supreme Court addressed the question of whether a tax refund, based upon prepetition earnings, qualified as property subject to administration by the bankruptcy trustee. Relying heavily on its prior decision in *Segal v. Rochelle*, the Court held that the debtor's refund was "sufficiently rooted in the prebankruptcy past" to qualify it as 'property' subject to administration by the bankruptcy trustee. Although *Kokoszka* involved the question of an individual's wages, there is no reason why its holding would not equally

Page 12

apply to the prepetition earnings of a corporation, with both an individual's wages and a corporation's earnings ultimately arising from services performed.

Consequently, following the decisions of *Segal v. Rochelle* and *Kokoszka v. Belford*, the Court finds that the tax refunds received by the Debtor on a postpetition basis, but based upon the prepetition overpayment of taxes in the years 2004 and 2006, qualify as prepetition interests of the estate, thereby making the interests subject to the Bank's security interest in the Debtor's property. However, as it regards the Defendant's requested relief for the tax refunds, this being that the Trustee immediately turnover the proceeds, it is necessary to address a couple of procedural points.

First, in his opposition to the Defendant's Motion for Summary Judgment, the Trustee set forth:

> the subject tax refunds would not have been received by the estate but for Trustee's post-petition work. The Bank did not have the ability to do anything to obtain those refunds itself. Accordingly, equity requires that the refunds be retained by Trustee for the benefit of the estate.

(Doc. No. 21, at pg. 6). This point finds support in the law.

Even though subject to the Bank's security interest, the Trustee is permitted to recover those costs and expenses associated with his efforts to recover the 2004 and 2006 tax refunds on behalf of the Debtor's bankruptcy estate. In § 506(c) of the Bankruptcy Code, it is provided, in relevant part, that the "trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim . . . ." However, as a matter of procedure, a trustee seeking to recover his costs and expenses under § 506(c) must file a motion. No such motion is presently before the Court.

Similarly, as a procedural matter, the Bank's request for the turnover of the proceeds of the Debtor's tax refunds is substantively a request that the Court enter an order requiring the Trustee to

Page 13

Louis Yoppolo, Trustee v. Comerica Bank
Case No. 09-3201

abandon the property in accordance with 11 U.S.C. § 554. Pursuant to Bankruptcy Rule 6007(b), however, a party must file a motion when seeking the abandonment of property from the estate. Again, no such motion is presently pending before the Court.

In summation, the Court finds that the Trustee, on account of the element set forth in § 547(b)(5), cannot legally sustain his burden of establishing that the prepetition transfers made by the Debtor to the Defendant were preferential for purposes of bankruptcy law. In addition, on account of its security agreement, the Defendant maintains a secured claim against the estate in the proceeds of the 2004 and 2006 tax year refunds received by the Debtor. To obtain possession of these proceeds, however, the Bankruptcy Rules require that the Defendant file a motion for abandonment. The Trustee may also, in accordance with 11 U.S.C. § 506(c), seek to recoup those reasonable and necessary costs and expenses he incurred in recovering the tax proceeds.

In reaching the conclusions found herein, the Court has considered all the evidence, exhibits and arguments of counsel, regardless of whether they are specifically referred to in this Opinion.

Page 14

09-03201-rls    Doc 28    FILED 12/23/09    ENTERED 12/23/09 16:29:05    Page 14 of 16

Louis Yoppolo, Trustee v. Comerica Bank
Case No. 09-3201

Accordingly, it is

**ORDERED** that the Motion of the Defendant, Comerica Bank, for Summary Judgment on the Trustee's Complaint for the Avoidance of Preferential Transfers pursuant to 11 U.S.C. § 547, be, and is hereby, GRANTED.

It is **FURTHER ORDERED** that the Trustee's Complaint to Avoid Preferential Transfers pursuant to 11 U.S.C. § 547, be, and is hereby, DISMISSED.

It is **FURTHER ORDERED** that the Defendant, Comerica Bank, is hereby deemed to hold a secured interest in those tax refunds recovered by the Trustee on behalf of the Debtor's bankruptcy estate.

It is **FURTHER ORDERED** that, within 21 days from the entry of this Order, the Trustee report to the Court concerning whether he wishes to pursue those other counts set forth in his Complaint.

Dated: December 23, 2009

Richard L. Speer
United States
Bankruptcy Judge

Page 15

# CERTIFICATE OF SERVICE

Copies were mailed this 23rd day of December, 2009 to:

Comerica Bank
500 Woodward Avenue
Detroit, MI 48226

Thomas W. Coffey
1150 Huntington Building
925 Euclid Avenue
Cleveland, OH 44115-1414

Jane Derse Quasarano
Bodman LLP
1901 St. Antoine St.
6th Floor
Detroit, MI 48226

Louis J Yoppolo (Trustee)
300 Madison Ave
Edison Plaza
#1200
Toledo, OH 43604-1556

H Buswell Roberts
1000 Jackson St
Toledo, OH 43604-5573

/s/Jennifer S Huff
Deputy Clerk, U.S. Bankruptcy Court